# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

v.                                                           **Case No. 07-CR-102**

**MARCO OCHOA-RAMOS**
        **Defendant.**

## SENTENCING MEMORANDUM

Defendant Marco Ochoa-Ramos pleaded guilty to possessing a firearm as a felon, contrary to 18 U.S.C. § 922(g), and the probation office prepared a pre-sentence report ("PSR"), which set defendant's offense level at 12 (base level 14, U.S.S.G. § 2K2.1(a)(6), minus 2 for acceptance of responsibility, § 3E1.1) and his criminal history category at VI, producing an imprisonment range of 30-37 months. Without objection, I adopted the PSR's guideline calculations. I then imposed a sentence of 27 months on consideration of the factors set forth in 18 U.S.C. § 3553(a), to run concurrently with the revocation sentence defendant was then serving. See United States v. Samuels, 521 F.3d 804, 815 (7th Cir. 2008) (setting forth a two-step sentencing procedure: (1) determine the guidelines, and (2) select an appropriate sentence under § 3553(a)).

## I. SENTENCING FACTORS

Section 3553(a) directs the court to consider:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the advisory guideline range;
>
> (5) any pertinent policy statements issued by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). After considering these factors, the court must impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. 18 U.S.C. § 3553(a)(2).

While the guidelines should be the starting point and the initial benchmark, Gall v. United States, 128 S. Ct. 586, 596 (2007), the district court may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007), or place "any thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007). Rather, the court must make an independent determination of what sentence is sufficient but not greater than necessary, taking into account the relevant § 3553(a) factors and the arguments of the parties. United States v. Wilms, 495 F.3d 277, 282 (6th Cir. 2007). The court is also free, under Booker's advisory guideline regime, to give further weight to a factor covered by a specific guideline adjustment, especially where that factor is present

2

to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. United States v. Wachowiak, 496 F.3d 744, 753 (7th Cir. 2007).

## II.  DISCUSSION

### A.  The Offense

On April 12, 2007, police observed a vehicle with no front license plate and attempted to conduct a traffic stop. Defendant, the driver, exited and ran, holding his waistband. The officers saw him fall and shove a black object into the snow. Officers arrested defendant and found a loaded 9 mm semi-automatic pistol buried in the snow. In a post-arrest statement, defendant claimed that when the officers tried to stop him, his passenger tossed a gun onto his lap, and he then ran from the car clutching the gun. As a convicted felon, defendant could not lawfully possess a firearm.

### B.  The Defendant

Defendant was born in Mexico in 1986, and first came to the United States with his parents in 2000, then returned to Mexico. He came back to this country in January 2002 on a visitor's visa, but he stayed beyond his six month authorization and enjoyed no legal status thereafter. At the time of sentencing, defendant was twenty-one years old, and he had compiled a fairly serious record in this country since January 2002. In July 2002, he was adjudicated delinquent for possessing a weapon as a minor and disorderly conduct arising out of an incident in which he fired a shotgun out of the window of his house. In October 2004, he was twice convicted as an adult of marijuana possession. On December 3, 2004, he was cited for assault and battery in municipal court arising out of an incident in which police saw him kicking and punching an individual who was lying on the ground. On December 29, 2004, he

3

was again convicted in municipal court of battery based on an assault on his girlfriend. In January 2006, he was twice convicted of felony drug possession and felony bail jumping, as he committed the second drug offense while on bond on the first. Also in January 2006, he was sentenced to 21 months in prison by another judge of this district for possessing a firearm as an illegal alien. After finishing that sentence defendant was supposed to be released to an immigration detainer and deported, but he was mistakenly released to the street on January 22, 2007. He never reported to probation to commence his federal supervised release, and his whereabouts were unknown to federal authorities until his arrest for this offense in April 2007.

Defendant admitted joining the Mexican Posse gang as a youth because he wanted to belong and get attention from girls, but he claimed that he wanted to get away from that now. He also admitted a marijuana problem. Defendant made some efforts to improve himself after his arrest in this case, taking anger management and HSED classes at the Milwaukee County Jai. Defendant had a son, aged three, who lived with the mother in Milwaukee. No child support had been ordered, and defendant had not seen the boy since he was a few days old. Defendant reported working for cash in this country, which the PSR could not confirm.

**C.    The Sentence**

The guidelines called for 30-37 months imprisonment in this case. Under all of the circumstances, I found a sentence just slightly below that range sufficient but not greater than necessary. This was a serious offense, given the type of gun, a loaded semi-automatic pistol, and defendant's flight from the officers; defendant's history with drugs and guns, recounted above; and the fact that he was on supervision for a gun case and had just been released from prison when he committed this crime. Therefore, a significant prison term was necessary to

4

satisfy the purposes of sentencing.

Defendant made various arguments for a variance and/or a departure, but I found only one at all persuasive. Defendant first attempted to mitigate the offense by claiming that the gun came from his passenger, who tossed it onto his lap and ran off. I had no way of knowing whether or not this was true; stories about guns being tossed on or near a defendant by unknown persons who then disappear are not all that unusual in these types of cases. What I did know was that rather than staying in the car, defendant clutched the gun, ran from the officers and tried to bury the gun in the snow. I also knew that defendant had a history of weapon possession. Defendant noted that there was no evidence of use, attempted use or threatened use of the gun. This was in defendant's favor, but if there had been such evidence defendant's guidelines would have been correspondingly higher. See, e.g., U.S.S.G. § 2K2.1(b)(6) (providing for a 4 level enhancement if the defendant possessed the weapon in connection with another felony offense); § 2K2.1(c) (providing for a cross-reference if the defendant used the firearm in connection with the commission of another offense). The absence of such aggravating factors did not really mitigate this case. Thus, I did not see the offense conduct as falling outside the heartland of § 2K2.1 or calling for a sentence different from the guidelines under § 3553(a).

Defendant next argued that his criminal history score, inflated by 3 points based on the proximity of this offense to his release from prison to supervised release, overstated the severity of his record and the likelihood of his re-offending. I disagreed. Whether analyzed as an argument for a traditional departure under U.S.S.G. § 4A1.3(b) or under § 3553(a), I found defendant's record too significant to discount. He had been in trouble almost constantly since coming to this country for good in January 2002, and his record included drug offenses, gun

5

Case 2:07-cr-00102-LA    Filed 05/13/08    Page 5 of 7    Document 53

offenses and violent offenses. While none of his priors qualified as "controlled substance offenses" or "crimes of violence" under U.S.S.G. § 2K2.1, they were nevertheless serious. I also took into account defendant's admitted membership in a street gang. I saw no reason to reduce the criminal history category based on the circumstances of this case, and the points under U.S.S.G. §§ 4A1.1(d) & (e) were properly assessed. Defendant claimed to be making efforts to better himself in jail, which was reflected in the letter from the jail teacher, but given defendant's past record I had some concerns about recidivism and protection of the public. I also noted that the 21 month sentence Chief Judge Randa imposed did not deter defendant, making a longer term necessary in this case.[1]

Finally, defendant requested consideration of his efforts to assist law enforcement. I can under § 3553(a) – and in the absence of a U.S.S.G. § 5K1.1 motion from the government – consider cooperation as a sign of positive character development and/or acceptance of responsibility beyond that reflected in the § 3E1.1 reduction. See, e.g., United States v. Severino, 454 F.3d 206, 211 (3d Cir. 2006) (citing United States v. Gatewood, 438 F.3d 894, 897 (8th Cir. 2006); United States v. Lake, 419 F.3d 111, 114 (2d Cir. 2005); United States v. Milne, 384 F. Supp. 2d 1309, 1312 (E.D. Wis. 2005)). Defendant stated that he worked with a Milwaukee Police Department detective beginning in March 2007, a time when he faced no new charges and was under no compulsion or obligation to cooperate. According to a memo from the detective, defendant made controlled buys.[2] Defendant also cooperated with federal

---

[1] Shortly before defendant appeared before me for sentencing, Judge Randa revoked his supervised release and imposed a prison term of 18 months.

[2] The government was apparently unable to prosecute any drug cases based on defendant's assistance because of his arrest in this matter, which adversely affected his credibility.

6

authorities after his arrest in this case regarding threats made against an AUSA, which included his wearing a wire in the jail, and provided information on other matters. The government declined to file a § 5K1.1 motion because the wire malfunctioned, and it could not otherwise corroborate defendant's statements. However, I concluded that these efforts warranted some consideration, as they went beyond what was necessary to obtain the 2-level reduction under § 3E1.1. Accordingly, I imposed a sentence consistent with a range 1 level lower. Such a sentence adequately accounted for defendant's cooperation, while still providing for a sufficient sentence and avoiding unwarranted disparity. For similar reasons, and without objection, I ordered the sentence to run concurrently with the revocation term. The guidelines recommend a consecutive sentence in revocation situations, see U.S.S.G. § 5G1.3(c) cmt. n.3(C), but in the present case, where the revocation was based on essentially the same conduct as the instant offense, a concurrent sentence was sufficient and provided for a reasonable incremental punishment. See United States v. Huusko, 275 F.3d 600, 603 (7th Cir. 2001) (noting "that when the conduct underlying the revocation and the current sentence is the same, a concurrent sentence would be reasonable").

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 27 months and recommended that he participate in any substance abuse treatment available. Upon release, I ordered him to serve three years of supervised release, with a drug aftercare and other conditions that appear in the judgment.

Dated at Milwaukee, Wisconsin, this 13th day of May, 2008.
/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

7